## CIRCUIT COURT OF FAIRFAX COUNTY

Charles D. Bennett, III

v.

Audrey Bennett

### August 25, 1994

### Case No. (Chancery) 127652

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter is before the court on defendant's request for permanent child and spousal support.

The court makes the following factual findings. The parties married in February 1983. Three children were born of their union, Atilya (December 15, 1981), Antoine (May 9, 1985), and Isaac (December 27, 1988). The parties lived together for a year prior to Atilya's birth. The parties separated in June 1988.[1] Mr. Bennett has had little contact with the children since that time. All three children have resided with Mrs. Bennett since the separation.

The parties moved to Virginia in the Spring of 1984 from New York. Before and after the move, Mr. Bennett worked for Digital Equipment Corporation. Mrs. Bennett worked prior to the move for the New York City Department of Transportation. Following the move to Virginia she worked briefly in minimum wage jobs, leaving the work force before Antoine was born. She has not worked out of the home since that time.

In January 1994, Mr. Bennett lost his job after twenty years with Digital. At that time he was earning approximately $50,000 per year. The loss of the job was involuntary on Mr. Bennett's part and not a firing for cause;

---

[1] The parties' testimony conflicted on who left whom in the separation. The Court finds the testimony on that issue inconclusive, but more importantly finds it of little significance in this case in relation to the issues of child and spousal support.

he was simply let go in a corporate cut-back. He began looking for a new job in April 1984 and has thus far been unsuccessful.

The parties' third child, Isaac, was born with Down's Syndrome. Although he is five and half years of age, he functions at the age of a one to three year old. He is the lowest functioning child in his special education class, and his prospects for higher functioning are not great. He goes to school for about three hours each weekday during the middle of the day. There he receives speech, occupational and physical therapy. He requires a high level of monitoring and attention.

The parties stipulated that Mr. Bennett receives $670 per month in unemployment benefits from the District of Columbia; that neither party has extraordinary medical expenses for any child of the parties; that there are no day care or health insurance expenses; that Mrs. Bennett receives Section 8 housing, whereby the difference between the fair market rental value and the amount actually paid by her is paid by the government; that Mrs. Bennett's fair market rent is $800 per month, and she last paid $69 in rent, for a difference of $731 paid to the landlord by the Government; that Mrs. Bennett presently receives $330 per month in "Social Security Income" on behalf of Isaac. The parties further stipulate that Mr. Bennett is presently under court order to pay Mrs. Bennett $142 per month in spousal support. Finally, the parties stipulate that Mr. Bennett's combined child and spousal support arrearage totals $12,224.53 as of June 1, 1994.

The parties stipulate that Mrs. Bennett's Section 8 housing allowance and social security benefits are "based in part on Mrs. Bennett's monthly income including support payments. The amount is based upon that agency's determination that Mrs. Bennett did not receive any income." That means that the amounts of Mrs. Bennett's Section 8 housing allowance and social security benefits are adjusted depending upon her income, which income includes support payments actually received. Indeed, Mrs. Bennett only receives those benefits as a substitute for and due to Mr. Bennett's failure to pay child support. The amounts reflected in the stipulation are based upon a determination by appropriate governmental agencies that Mrs. Bennett has received no income, including spousal support. For the reasons stated below, the Court does not treat the Section 8 housing allowance and social security benefits received by her as income for purposes of child support.

Based on Mr. Bennett's current income ($670 in unemployment benefits) and Mrs. Bennett's lack of income, the guideline amount of child support to be paid by Mr. Bennett to Mrs. Bennett is $170.00.

In determining awards of spousal and child support, certain issues must be resolved. Mr. Bennett seeks to have this Court impute income to Mrs. Bennett, claiming that she worked while in New York and could work now with the assistance of day care for the children. The Court declines to impute income to Mrs. Bennett. The Court finds that the lifestyle of the parties was such that Mrs. Bennett has essentially not worked since the children were born; that there was insufficient evidence of any income that could be imputed to her; and that there was insufficient evidence that her income could exceed the cost of day care. Most importantly, the Court finds that Mrs. Bennett is fully and properly occupied with the demands and special needs of Isaac. To require her to work or to impute income to her would be inappropriate.

The Court also finds that Mr. Bennett is not voluntarily unemployed or underemployed. Contrary to Mrs. Bennett's arguments, Mr. Bennett's departure from Digital was not akin to that of the stockbroker in *Antonelli v. Antonelli*, 242 Va. 152 (1991). Mr. Bennett did not choose to change jobs; he was laid off contrary to his wishes and through no fault of his own. Nor is Mr. Bennett like the spouse in *Hamel v. Hamel*, (Va. App., unpublished, decided March 8, 1994), who voluntarily quit her job and presented no evidence that her continued unemployment was involuntary. Nor is Mr. Bennett voluntarily unemployed like the husband in *Bolinski v. Bolinski*, (Va. App., unpublished, decided September 14, 1993), who failed to seek employment diligently and had refused employment at a reduced salary when it was offered. Therefore the Court does not impute income to Mr. Bennett under § 20-108.1(B)(3) at this time. However, the Court orders this matter continued for six months until December 1994 to review (among other matters) Mr. Bennett's efforts to find employment.

Mrs. Bennett also relies upon *Strailman v. Strailman* (Va. App., unpublished, decided September 17, 1991). *Strailman* provides support for the assertion that a party losing his job due to a reduction in force may nonetheless have ascribed to him an income akin to the one he lost absent evidence that he is *unemployable*. But the decision in *Strailman* was in no small part due to that husband's decision after his loss of employment to spend "substantial sums [tens of thousands of dollars] on maintenance of his horses, radio and computer equipment, and domestic help."

Relying upon *Whitaker v. Colbert*, 18 Va. App. 202, 442 S.E.2d 429 (1994), Mr. Bennett asserts that social security benefits received by Mrs. Bennett on behalf of Isaac should be treated as income for which Mr. Bennett should receive credit in the determination of child support. This

Court holds otherwise. It is clear that under § 20-102.2(C) of the Code, social security benefits received by a spouse may under certain circumstances be treated as gross income for purposes of determining the guideline amount of child support. *Whitaker* holds that social security benefits received by children due to the disability of a parent "should be considered income derived by them from [that parent] and thus should be included in the computation of his ongoing support obligations and credited against that obligation." *Whitaker*, 442 S.E.2d at 431. That is so because those social security benefits to the children "are entitlements earned by [that parent] through his earlier employment. They are a substitute for his lost ability to provide for the children through the fruits of future employment . . . . The children's benefits inure to them not through their own entitlement but because of their status as dependents of a disabled parent. The benefits accrue to them to offset [that parent's] diminished ability to provide for them normally. [That parent] is entitled to credit for that alternative provision of ongoing support." *Whitaker*, 442 S.E.2d at 431. In essence, albeit indirectly, when the parent is disabled he is providing those funds to the child. In the instant case, it is not the parent but rather the child that is disabled. Mr. Bennett is not entitled to credit for that payment based on *Whitaker*.

In addition, Mrs. Bennett receives social security benefits not through her own entitlement, but as a result of Isaac's disability, and only because and to the extent that Mr. Bennett fails to pay child support. To include these benefits as income to Mrs. Bennett for purposes of determining child support would only serve to encourage Mr. Bennett not to make support payments. To the extent that such social security benefits qualify as "independent financial resources" under § 20-108.1(B)(9), the Court finds that they should have no effect on Mr. Bennett's support obligation.

Mr. Bennett further urges this Court to treat the Section 8 housing allowance that Mrs. Bennett receives as income to her. The Court finds that under § 20-108.2(C), benefits from such a public assistance program are excluded from the determination of the gross income of the parties. In addition, payment of spousal support by Mr. Bennett will reduce and perhaps eliminate that housing allowance for Mrs. Bennett. To treat that housing allowance as income to Mrs. Bennett for purposes of determining either child support or spousal support is improper.

The Court finds the evidence insufficient to deviate from the child support guideline amount and orders Mr. Bennett to pay $170.00 monthly in

child support. The court further awards Mrs. Bennett $100.00 in spousal support. Child and spousal support are payable on the first of each month.

The court continues this matter to January 1995 (or earlier should Mr. Bennett become employed) for further review at that time on the issue of the amount of child and spousal support to be paid by Mr. Bennett.